[See Case No. 5,484.]

## Case No. 4,880.

### The FLORENCE.

[2 Flip. 56;[1] 23 Int. Rev. Rec. 105; 4 Cent. Law J. 249; 2 Cin. Law Bul. 60.]

District Court, E. D. Michigan. June Term, 1877.

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

Geo. W. Moore, for libellant.
H. A. Swan, contra.

BROWN, District Judge. The principal question discussed upon the argument related to the jurisdiction of the court. The libel sounds in tort, and it was strenuously insisted by claimant's advocate that no lien attached to the scow for the conversion of the lighter, both parties conceding that claimant took possession of her without authority from the owner. Cases of spoliation and damage are of admiralty and maritime jurisdiction. These include illegal seizures or depredations upon vessels or goods afloat. Every violent dispossession of property on the ocean is, prima facie, a maritime tort, and as such belongs to the admiralty jurisdiction. Benedict, §§ 310, 311. And the owners of a vessel are liable for torts committed by the master in the course of his employment.

There can be no doubt that if this were a case of contract—that is, if the agent of whom the claimant hired the scow, and whom claimant in good faith believed to have authority to loan it, had in fact possessed that authority, a libel in rem could have been sustained for the use of the lighter. A person furnishing a small boat or a lighter for the use of a vessel has as valid a lien upon her as though he had furnished an anchor, a compass, a chronometer, or any other of the articles usually denominated materials. In the case of The Dick Keys [Case No. 3,898], Mr. Justice McLean held that, where the master of a steamboat, on her behalf, agreed to pay $20 per day for the use of a barge, a libel might be maintained against the steamboat for the amount. Mr. Parsons says (2 Pars. Shipp. & Adm. 148): "If a barge is necessary to a steamboat, its hire to it will be regarded as material furnished for its equipment;" citing Amis v. The Louisa, 9 Mo. 621; Gleim v. The Belmont, 11 Mo. 112; The Kentucky v. Brooks, 1 G. Greene, 398,—cases which fully sustain the text of the learned commentator.

Now, upon principle, it is difficult to say why, if an action in rem will lie for the use or value of property lawfully obtained, a similar action will not lie for the use or value of property unlawfully obtained; in other words, where the wrong is greater, the remedy should not be less. The general rule with regard to torts seems to be, that the owners and the vessel are liable for all

the acts of the master done in the execution of the business in which he may be employed, by which third persons are injured, whether the injury was occasioned by the unlawful acts or by the negligence or want of skill of the master. Dias v. The Revenge [Case No. 3,877]; Dean v. Angus [Id. 3,702]; The Martha Anne [Id. 9,146]. The principle underlying these decisions is that, for torts committed in the business of the master as such, or in which the ship is the active, the injuring or the benefited party, the injured party has his remedy as well against the vessel as against her owner and master. The mere fact that the person committing a tort is master of a vessel, of course, does not make her liable; but, if it be an act done in pursuance of his business as master, or is beneficial to the vessel, she becomes liable in rem. The English cases hold that the vessel is not liable for a willful collision. This doctrine, however, is denied in the case of Ralston v. The State Rights [Id. 11,540], where a libel was sustained for running down the libellant's vessel, done by the express direction of the master of the colliding vessel.

It is further insisted in this case that, locality being the test of jurisdiction in cases of tort, the injury was not done upon navigable waters, but that the lighter was seized within a fish-pound staked off from the river. I do not regard this fact as material. In the case of Plummer v. Webb [Case No. 11,233], a libel was sustained for the abduction of a minor son upon a voyage upon the high seas. Mr. Justice Story observed: "Here it is true that the tortious act, or cause of damage, might be properly deemed to arise in port; but it was a continuing act and cause of damage during the whole voyage; it was in no just sense a complete and perfected wrong until the departure of the vessel from port, and it traveled along with the parties as a continuing injury through the whole voyage, and terminated only with the death of the son at sea." See, also, Sherwood v. Hall [Id. 12,777]. In the case of The Yankee v. Gallagher [Id. 18,124], the court held that, "if the tortious act originates in port, and is not a perfected wrong until the vessel leaves the port, it is a continuous act, and travels with the tort-feasor and the injured party during the whole voyage, and comes within the jurisdiction of the admiralty upon the principle that, if the thing be done on the high seas and brought to land, it is appropriate to a court of admiralty to decide the question as a maritime tort." In this case the libellant had been seized in the city of San Francisco by a vigilance committee, and carried on board the bark and landed in the Sandwich Islands. In the case at bar, admitting that the fish-pound was not navigable water, the lighter was taken to the scow then lying in navigable waters, and was used by her there, and I think the case falls within the authorities above cited.

No willful misconduct or wrongful purpose on the part of the claimant need be shown; for the gist of the action is the use of the lighter by the vessel, and I hold that it makes no difference whether the claimant became possessed of her by a contract, or by an act which was technically a conversion. The exception to the jurisdiction must therefore be overruled.

Ouillette, the owner of the scow, took possession of the lighter without authority from the libellant. After he had her for some time, and she had been injured either by Ouillette's negligence in allowing her to pound upon the bottom, or by becoming leaky, libellant went to Ouillette and demanded that the lighter should be returned to him in good order. Ouillette then put her into the hands of a carpenter, who repaired the damages done her, and also made some alterations and repairs on her at the request of the libellant. When libellant went to the carpenter to demand her, he refused to give her up, either until the repairs put upon her by Ouillette's directions were paid, as libellant says, or until libellant would release Ouillette from all liability, or would clear Ouillette of the law, as the carpenter says. As it is clear that libellant offered to pay for the repairs which he had ordered, and the carpenter did not detain her upon that ground, his further detention of her must be attributed to Ouillette, notwithstanding his statement that the carpenter detained her without authority from him. It was the duty of Ouillette to see that the lighter was returned, and no excuse for the non-performance of that duty, not attributable to the libellant, can be accepted.

There is considerable conflict with regard to the value of the lighter; but, upon all the testimony I think that $45 is as much as she is worth. There must be a decree for the libellant for this amount, with interest.